Natalie Lyons, No. 293026
**COHEN & MALAD, LLP**
One Indiana Square
Suite 1400
Indianapolis, IN 46204
(317) 636-6481
Fax: (317) 636-2593
nlyons@cohenandmalad.com

Samuel J. Strauss (*pro hac vice* forthcoming)
Raina Borrelli (*pro hac vice* forthcoming)
**TURKE & STRAUSS LLP** (Firm ID 99937)
613 Williamson St., Suite 201
Madison, WI 53703
Telephone (608) 237-1775
sam@turkestrauss.com
raina@turkestrauss.com
*Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| JAMES COYER, individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| SIERRA PACIFIC INDUSTRIES, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiff James Coyer ("Plaintiff") brings this Class Action Complaint, on behalf of himself and all others similarly situated (the "Class") against Defendant Sierra Pacific Industries ("SPI" or "Defendant") alleging as follows, based upon information and belief, investigation of counsel, and personal knowledge of Plaintiff.

1.      Between June 10, 2022, to June 11, 2022, SPI, one of the largest U.S. lumber manufacturers and forest products company that owns and manages more than 2.4 million acres of timberland[1], lost control over its computer network and the highly sensitive personal information of its current and former employees stored on that computer network in a data breach perpetrated by cybercriminals ("Data Breach"). The number of total breach victims is unknown, but on information and belief, the Data Breach has impacted thousands of current and former employees.

2.      On information and belief, the Data Breach began on or around June 10, 2022, when cybercriminals first accessed Defendant's network, and was not discovered by Defendant until June 11, 2022, an entire day later. Following an internal investigation, Defendant learned cybercriminals gained unauthorized access to current and former employees' personally identifiable information ("PII"). Defendant struggled to identify what information was involved in the Data Breach and whom it belonged to until November 23, 2022, over three months later.

3.      On or about December 30, 2022—an appalling six months after the Data Breach occurred and when Defendant first learned of the Data Breach—SPI finally began notifying Class Members about the Data Breach ("Breach Notice"), an example of which is attached hereto as Exhibit A. However, Defendant has not completed notice and continues to notify breach victims.

4.      Upon information and belief, cybercriminals were able to breach Defendant's systems because Defendant failed to adequately train its employees on cybersecurity, failed to adequately monitor its agents, contractors, vendors, and suppliers in handling and securing the PII of Plaintiff, and failed to maintain reasonable security safeguards or protocols to protect the

Class's PII—rendering them easy targets for cybercriminals.

5.     Defendant's Breach Notice obfuscated the nature of the breach and the threat it posed—refusing to tell its employees how many people were impacted, how the breach happened, or why it took the Defendant half a year to begin notifying victims that cybercriminals had gained access to their highly private information.

6.     Defendant's failure to timely report the Data Breach made the victims vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports and, thereby, prevent unauthorized use of their PII.

7.     Defendant knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII misuse.

8.     In failing to adequately protect employees' information, adequately notify them about the breach, and in obfuscating the nature of the breach, Defendant violated state law and harmed an unknown number of its current and former employees.

9.     Plaintiff and members of the proposed Class are victims of Defendant's negligence and inadequate cyber security measures, including its failure to properly use up-to-date security practices to prevent the Data Breach. Specifically, Plaintiff and members of the proposed Class entrusted Defendant with their PII. But Defendant betrayed that trust.

10.     Plaintiff James Coyer is a former SPI employee and Data Breach victim. Mr. Coyer worked for SPI from 2016 until 2021.

11.     The exposure of one's PII to cybercriminals is a bell that cannot be unrung. Before the Data Breach, the private information of Plaintiff and the Class was exactly that—private. Not anymore. Now, their private information is permanently exposed and unsecure.

---

[1]SPI, https://www.spi-ind.com/Home/AboutUs (last visited June 3, 2023).

**PARTIES**

12.    Plaintiff, James Coyer, is a natural person and citizen of California, residing in Cottonwood, California, in Shasta County, where he intends to remain.

13.    Defendant, SPI, is incorporated in California, with its principal place of business at 19794 Riverside Avenue Anderson, CA 96007 in Shasta County. Defendant can be served through its registered agent James Lynch.

**JURISDICTION AND VENUE**

14.    This Court has subject matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one Class Member and Defendant are citizens of different states.

15.    This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District and does substantial business in this District.

16.    Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and § 1391(b)(2) because Defendant resides in this District and a substantial part of the events or omissions giving rise to the claim occurred in this District.

**FACTUAL BACKGROUND**

*SPI*

17.    SPI touts itself as one of the largest lumber manufacturers in the United States, owning and managing more than 2.4 million acres of timberland in California, Oregon, and Washington.[2] With "modern state-of-the-art-equipment", SPI claims that it "leads the industry"

---

[2] About us, SPI, https://www.spi-ind.com/Home/AboutUs (last visited June 3, 2023).

with its forest products and services.[3] It boasts an annual revenue of $830 million,[4] and nearly 6,000 employees in over 30 states.[5]

18. On information and belief, SPI accumulates highly private PII of its employees.

19. On information and belief, SPI maintains former employees' PII for years after the employee-employer relationship is terminated.

20. In collecting and maintaining its employees' PII, Defendant agreed it would safeguard the data in accordance with state law and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their PII.

21. As a company that "leads the industry" and prioritizes "state-of-the-art-equipment", SPI understood the need to protect its current and former employees' PII and prioritize its data security.

22. Despite recognizing its duty to do so, on information and belief, SPI has not implemented reasonable cybersecurity safeguards or policies to protect employee PII or trained its IT or data security employees to prevent, detect, and stop breaches of its systems. As a result, SPI leaves significant vulnerabilities in its systems for cybercriminals to exploit and gain access to employees' PII.

***The Data Breach***

23. Plaintiff is a former employee of SPI.

24. As a condition of employment with SPI, Plaintiff provided Defendant with his PII. Defendant used that PII to facilitate its employment of Plaintiff, including payroll, and required Plaintiff to provide that PII to obtain employment and payment for that employment.

---

[3] Specialty products, SPI, https://www.spi-ind.com/Sales/Export (last visited June 3, 2023).
[4] SPI Revenue, ZoomInfo, https://www.zippia.com/sierra-pacific-industries-careers-38375/revenue/ (last visited June 3, 2023).
[5] Career Opportunities, https://www.spi-ind.com/Employment (last visited June 9, 2023).

25.     On information and belief, SPI collects and maintains employees' unencrypted PII in its computer systems.

26.     In collecting and maintaining PII, Defendant implicitly agreed that it would safeguard the data using reasonable means according to their internal policies, as well as state and federal law.

27.     According to the Breach Notice, SPI claims to have "discovered [its] network was the target of a sophisticated cyberattack" on June 11, 2022. Ex. A. SPI further admits that this unauthorized third party had gained undetected, remote access as early as June 10, 2022.

28.     In other words, the Data Breach investigation revealed that cybercriminals had unfettered access to SPI's current and former employees' PII for, at minimum, an entire day before discovery and that Defendant's cyber and data security systems were completely inadequate and allowed cybercriminals to obtain files containing a treasure trove of thousands of its employees' highly private information.

29.     SPI announced that the following types of highly private information were compromised in Defendant's Data Breach:

  a. Names;

  b.   Dates of Birth;

  c. Social Security number;

  d.   Driver's license;

  e. State Identification number;

  f. Financial Account information;

  g.   Medical information; and

h.   health insurance information.[6]

30.   On information and belief, the notorious Black Basta ransomware gang was responsible for the cyberattack.[7] Black Basta is one of the most active hackers, having hacked over 50 companies around the world within mere months, Black Basta frequently posts the stolen private information for sale.[8] SPI knew or should have known of the tactics that hackers like Black Basta employ.

31.   An example of Black Basta's ransomware standard changes to a company's network following a breach is displayed below:



[6] Notice of Data Privacy Incident, SPI,   https://www.spi-ind.com/Home/DataPrivacyEvent (last visited June 3, 2023).
[7]Ransomware   Spotlight,   Mircrotrend,   https://www.trendmicro.com/vinfo/us/security/news/ransomware-spotlight/ransomware-spotlight-blackbasta (last visited June 3, 2023).
[8] Black Basta Ransomware, Tripwire,https://www.tripwire.com/state-of-security/black-basta-ransomware-what-you-need-to-know (last visited June 3, 2023).

32.     With the PII secured and stolen by Black Basta, the hackers then purportedly issued a ransom demand to SPI. However, SPI has provided no public information on the ransom demand or payment.

33.     Following the deadline of a ransom demand, Black Basta is known to release all stolen information obtained from a data breach onto a leak page. An example of the leak page displaying a small percentage of Black Basta's numerous victims is displayed below:



34. On or about December 30, 2022—*six* months after the Data Breach occurred and the Defendant first learned of the Data Breach—SPI finally notified Plaintiff and Class Members about the Data Breach.

35. Despite its duties and alleged commitments to safeguard PII, Defendant, a self-proclaimed leader in its industry, did not in fact follow industry standard practices in securing employees' PII, as evidenced by the Data Breach.

36. In response to the Data Breach, SPI contends that it has or will be "reviewing and enhancing existing policies and procedures." Ex. A. Although Defendant fails to expand on what these alleged "enhancements" are, such enhancements should have been in place before the Data Breach.

37. Through its Breach Notice, Defendant also recognized the actual imminent harm and injury that flowed from the Data Breach, so it put the onus on breach victims to "remain vigilant against incidents of identity theft and fraud by reviewing [their] account statements" and "monitor [their] free credit reports for suspicious activity". Ex. A.

38. On information and belief, SPI has offered several months of complimentary credit monitoring services to victims, which does not adequately address the lifelong harm that victims will face following the Data Breach. Indeed, the breach involves PII that cannot be changed, such as Social Security numbers and dates of birth.

39. Even with several months' worth of credit monitoring services, the risk of identity theft and unauthorized use of Plaintiff's and Class Members' PII is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

40. Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiff's and the Class's PII.

Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff's and the Class's financial accounts.

41.     On information and belief, SPI failed to adequately train its IT and data security employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over its employees' PII. Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the PII.

***The Data Breach was a Foreseeable Risk of which Defendant was on Notice.***

42.     It is well known that PII, including Social Security numbers, is an invaluable commodity and a frequent target of hackers.

43.     In 2021, there were a record 1,862 data breaches, surpassing both 2020's total of 1,108 and the previous record of 1,506 set in 2017.[9]

44.     In light of recent high profile data breaches, including, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), SPI knew or should have known that its electronic records would be targeted by cybercriminals.

45.     Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of and take appropriate measures to prepare for and are able to thwart such an attack.

46.     Despite the prevalence of public announcements of data breach and data security compromises, and despite its own acknowledgments of data security compromises and its duties

---

[9] Data breaches break record in 2021, CNET, https://www.cnet.com/news/record-number-of-data-breaches-reported-in-2021-new-report-says/ (last accessed May 16, 2023).

to keep PII private and secure, Defendant failed to take appropriate steps to protect the PII of Plaintiff and Class Members from being compromised.

47.     In the years immediately preceding the Data Breach, Defendant knew or should have known that Defendant's computer systems were a target for cybersecurity attacks, including ransomware attacks involving data theft, because warnings were readily available and accessible via the internet.

48.     In October 2019, the Federal Bureau of Investigation published online an article titled "High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations" that, among other things, warned that "[a]lthough state and local governments have been particularly visible targets for ransomware attacks, ransomware actors have also targeted health care organizations, industrial companies, and the transportation sector."[10]

49.     In April 2020, ZDNet reported, in an article titled "Ransomware mentioned in 1,000+ SEC filings over the past year," that "[r]ansomware gangs are now ferociously aggressive in their pursuit of big companies. They breach networks, use specialized tools to maximize damage, leak corporate information on dark web portals, and even tip journalists to generate negative news for companies as revenge against those who refuse to pay."[11]

50.     In September 2020, the United States Cybersecurity and Infrastructure Security Agency published online a "Ransomware Guide" advising that "[m]alicious actors have adjusted their ransomware tactics over time to include pressuring victims for payment by threatening to release stolen data if they refuse to pay and publicly naming and shaming victims as secondary

---

[10]High-Impact Ransomware Attacks Threaten U.S. Businesses and Organizations, FBI, available at https://www.ic3.gov/Media/Y2019/PSA191004 (last accessed May 04, 2023).
[11]     Ransomware mentioned in 1,000+ SEC filings over the past year, ZDNet, https://www.zdnet.com/article/ransomware-mentioned-in-1000-sec-filings-over-the-past-year/ (last accessed May 04, 2023).

forms of extortion."[12]

51.     This readily available and accessible information confirms that, prior to the Data Breach, Defendant knew or should have known that (i) ransomware actors were targeting entities such as Defendant, (ii) ransomware gangs were ferociously aggressive in their pursuit of entities such as Defendant, (iii) ransomware gangs were leaking corporate information on dark web portals, and (iv) ransomware tactics included threatening to release stolen data.

52.     In light of the information readily available and accessible on the internet before the Data Breach, Defendant, having elected to store the unencrypted PII of thousands of its current and former employees in an Internet-accessible environment, had reason to be on guard for the exfiltration of the PII and Defendant's type of business had cause to be particularly on guard against such an attack.

53.     Before the Data Breach, Defendant knew or should have known that there was a foreseeable risk that Plaintiff's and Class Members' PII could be accessed, exfiltrated, and published as the result of a cyberattack. Notably, data breaches are prevalent in today's society therefore making the risk of experiencing a data breach entirely foreseeable to Defendant.

54.     Prior to the Data Breach, Defendant knew or should have known that it should have encrypted its employees' Social Security numbers and other sensitive data elements within the PII to protect against their publication and misuse in the event of a cyberattack.

***Plaintiff James Coyer's Experience***

55.     From approximately 2016 until August 2021, Plaintiff Coyer was employed by Defendant.

56.     As a condition of employment, SPI required Mr. Coyer to provide his PII.

---

[12] Ransomware Guide, U.S. CISA, https://www.cisa.gov/stopransomware/ransomware-guide (last accessed May 04, 2023).

57.     Mr. Coyer provided his PII to SPI and trusted that the company would use reasonable measures to protect it according to SPI's internal policies and state law.

58.     Defendant deprived Plaintiff of the earliest opportunity to guard himself against the Data Breach's effects by failing to notify him about it via a Breach Notice. In fact, Plaintiff was forced to reach out via Defendant's toll-free number once he learnt of the Data Breach, at which time he received confirmation that he was a victim of the Breach on June 1, 2023.

59.     Plaintiff suffered actual injury from the exposure of his PII—which violates his rights to privacy.

60.     Plaintiff suffered actual injury in the form of damages to and diminution in the value of his PII. After all, PII is a form of intangible property—property that Defendant was required to adequately protect.

61.     As a result of the Data Breach and the recommendations of Defendant's Notice, Plaintiff has spent time and made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing credit card and financial account statements, changing his online account passwords, placing a credit freeze through the three main credit bureaus, and monitoring his credit information as suggested by Defendant.

62.     Plaintiff has and will spend considerable time and effort monitoring his accounts to protect himself from identity theft. Plaintiff fears for his personal financial security and uncertainty over what PII was exposed in the Data Breach. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

63.     Plaintiff is now subject to the present and continuing risk of fraud, identity theft,

and misuse resulting from his PII being placed in the hands of unauthorized third parties. This injury was worsened by Defendant's delay in informing Plaintiff and Class Members about the Data Breach.

64. In fact, following the Data Breach, between October and November 2022, Plaintiff's Citi Bank credit card experienced a multitude of fraudulent charges amounting to $6,000. In January 2023 and again in May 2023, Plaintiff's Capitol One credit card experienced attempts to fraudulent attempts to charge for Walmart purchases Plaintiff did not make. These fraudulent charges and attempts at charges implicate the theft of Plaintiff's PII by cybercriminals.

65. In January 2023, Plaintiff received an email from AT&T informing him that his new cell phone was ready to be delivered to an unfamiliar Pennsylvania address. Plaintiff had not ordered a new cell phone and certainly not one to be delivered to a Pennsylvania address associated with him. During that same month, Plaintiff was notified by PCE Credit Union regarding a fraudulent attempt to open an account under his name, further evidencing that Plaintiff's information has been stolen and placed in the hands of cybercriminals.

66. Finally, Plaintiff also received spam calls and texts following the Data Breach.

67. Plaintiff has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

***Plaintiff and the Proposed Class Face Significant Risk of Continued Identity Theft***

68. Plaintiff and members of the proposed Class have suffered injury from the misuse of their PII that can be directly traced to Defendant.

69. As a result of SPI's failure to prevent the Data Breach, Plaintiff and the proposed

Class have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. Plaintiff and the class have suffered or are at an increased risk of suffering:

    a.  The loss of the opportunity to control how their PII is used;

    b.  The diminution in value of their PII;

    c.  The compromise and continuing publication of their PII;

    d.  Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

    e.  Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

    f.  Delay in receipt of tax refund monies;

    g.  Unauthorized use of stolen PII; and

    h.  The continued risk to their PII, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the PII in their possession.

70. Stolen PII is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII can be worth up to $1,000.00 depending on the type of information obtained.

71. The value of Plaintiff's and the proposed Class's PII on the black market is considerable. Stolen PII trades on the black market for years, and criminals frequently post stolen

private information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

72.      Social Security numbers are particularly attractive targets for hackers because they can easily be used to perpetrate identity theft and other highly profitable types of fraud. Moreover, Social Security numbers are difficult to replace, as victims are unable to obtain a new number until the damage is done.

73.      It can take victims years to spot identity or PII theft, giving criminals plenty of time to use that information for cash.

74.      One such example of criminals using PII for profit is the development of "Fullz" packages.   Cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

75.      The development of "Fullz" packages means that stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff's and Class members' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiff and the Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiff's and members of the Class's stolen PII is being misused, and that such misuse is fairly traceable to the Data Breach.

76. Defendant disclosed the PII of Plaintiff and members of the proposed Class for criminals to use in the conduct of criminal activity. Specifically, Defendant exposed the PII of Plaintiff and members of the proposed Class to people engaged in disruptive still notifying and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII.

77. Defendant's failure to properly notify Plaintiff and the Class of the Data Breach exacerbated Plaintiff's and the Class's injuries by depriving them of the earliest ability to take appropriate measures to protect their PII and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendant failed to adhere to FTC guidelines.***

78. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of PII.

79. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

    a. protect the personal customer information that they keep;

    b. properly dispose of personal information that is no longer needed;

    c. encrypt information stored on computer networks;

    d. understand their network's vulnerabilities; and

    e. implement policies to correct security problems.

80. The guidelines also recommend that businesses watch for large amounts of data

being transmitted from the system and have a response plan ready in the event of a breach.

81.     The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

82.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

83.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to employees' PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

## CLASS DEFINITION AND ALLEGATIONS

84.     Plaintiff sues on behalf of himself and the proposed nationwide class ("Class") and state subclass ("Subclass"), defined as follows, pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3):

**Nationwide Class:**
> **All individuals residing in the United States whose PII was compromised in the SPI Data Breach including all those who received notice of the breach.**

**California Subclass:**
> **All individuals residing in or who have resided in California whose PII was compromised in the SPI Data Breach including all those who received notice of the breach.**

85.     Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

86.     Plaintiff reserves the right to amend the class definition.

87.     This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

88.     **Numerosity**. The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiff is informed and believes that the proposed Class includes at least thousands of individuals who have been damaged by Defendant's conduct as alleged herein. The precise number of Class Members is unknown to Plaintiff but may be ascertained from Defendant's records.

89.     **Commonality and Predominance.** This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members. These common legal and factual questions include, but are not limited to, the following:

    a.   whether Defendant engaged in the wrongful conduct alleged herein;

    b.   whether the alleged conduct constitutes violations of the laws asserted;

    c.   whether Defendant owed Plaintiff and the other Class Members a duty to adequately protect their PII;

    d.   whether Defendant breached its duty to protect the PII of Plaintiff and the other Class Members;

    e.   whether Defendant knew or should have known about the inadequacies of its data protection, storage, and security;

f. whether Defendant failed to use reasonable care and commercially reasonable methods to safeguard and protect Plaintiff's and the other Class Members' PII from unauthorized theft, release, or disclosure;

g. whether the proper data security measures, policies, procedures, and protocols were in place and operational within Defendant's computer systems and digital storage environment;

h. whether Defendant had the proper computer systems to safeguard and protect Plaintiff's and the other Class Members' PII from unauthorized theft, release or disclosure;

i. whether Defendant breached the promise to keep Plaintiff's and the Class Members' PII safe and to follow federal data security protocols;

j. whether Defendant's conduct was the proximate cause of Plaintiff's and the other Class Members' injuries;

k. whether Defendant took reasonable measures to determine the extent of the Data Breach after it was discovered;

l. whether Plaintiff and the other Class Members suffered ascertainable and cognizable injuries as a result of Defendant's conduct;

m. whether Plaintiff and the other Class Members are entitled to recover actual damages and/or statutory damages; and,

n. whether Plaintiff and the other Class Members are entitled to other appropriate remedies, including declaratory and injunctive relief.

90. Defendant engaged in a common course of conduct giving rise to the claims asserted by Plaintiff on behalf of himself and the other Class Members. Individual questions, if

any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

91.     **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class. All Class Members were subject to the Data Breach and had their PII accessed by and/or disclosed to unauthorized third parties. Defendant's misconduct impacted all Class Members, including Plaintiff, in a similar manner.

92.     **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Members of the Class, have retained counsel experienced in complex consumer class action litigation, and intend to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class.

93.     **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for the Class Members, on an individual basis, to obtain effective redress for the wrongs done to them. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts and would also increase the delay and expense to all parties and the courts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale and comprehensive supervision a single court, and presents no unusual management difficulties under the circumstances here.

94.     Plaintiff and Class Members are ascertainable because Defendant's records will identify all victims of Defendant's Data Breach.

95.     Plaintiff and Class Members are sufficiently numerous to justify class action. Specifically, the putative Class contains several thousand individuals.

96.     Plaintiff and Class Members have a well-defined community of interest in pursuing relief from the harm that resulted from the Data Breach, including (1) predominant common questions of law or fact; (2) a class representative with claims or defenses typical of the class; and (3) a class representative who can adequately represent the class.

97.     The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Classes and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

98.     The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

99.     Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

100.     Unless a Class-wide injunction is issued, Defendant may continue in its failure to

properly secure the PII of Class Members, Defendant may continue to refuse to provide proper

notification to Class Members regarding the Data Breach, and Defendant may continue to act

unlawfully as set forth in this Complaint.

## FIRST CAUSE OF ACTION
### Negligence
### (On Behalf of Plaintiff and the Class)

101. Plaintiff restates and realleges all proceeding allegations above and hereafter as if

fully set forth herein.

102. Upon acquiring and gaining access to the PII of Plaintiff and Class Members,

Defendant owed to Plaintiff and Class Members a common law duty of reasonable care in

handling and using this information and securing and protecting the information from being

stolen, accessed, and misused by unauthorized parties. Pursuant to this duty, Defendant was

required to design, maintain, and test its security systems to ensure that these systems were

reasonably secure and capable of protecting the PII of Plaintiff and Class Members. Defendant

further owed to Plaintiff and Class Members a duty to implement systems and procedures that

would detect a breach of its security systems in a timely manner and to timely act upon security

alerts from such systems.

103. Defendant owed this duty to Plaintiff and Class Members because Plaintiff and

Class Members compose a well-defined, foreseeable, and probable class of individuals whom

Defendant should have been aware could be injured by Defendant's inadequate security

protocols. Defendant actively solicited Plaintiff's and Class Members' PII in exchange for

Plaintiff and the Class's employment. Attendant to Defendant's solicitation, use and storage,

Defendant knew of its inadequate and unreasonable security practices with regard to its

computer/server systems and also knew that hackers and thieves routinely attempt to access, steal

and misuse the PII that Defendant actively solicited from its employees. As such, Defendant knew a breach of its systems would cause damage to Plaintiff and the other Class Members.

104. Defendant breached its duty to Plaintiff and Class Members by failing to implement and maintain security controls that were capable of adequately protecting the PII of Plaintiff and the other Class Members.

105. Defendant also breached its duty to timely and accurately disclose to Plaintiff and Class Members that their PII had been or was reasonably believed to have been improperly accessed or stolen.

106. Defendant's negligence in failing to exercise reasonable care in protecting the PII of Plaintiff and the other Class Members is further evidenced by Defendant's failure to comply with legal obligations and industry standards, and the delay between the date of the Data Breach and the time when the Data Breach was disclosed.

107. Furthermore, Defendant was negligent for waiting months to notify Plaintiff and Class Members of the Data Breach.

108. Additionally, Section 5 of the Federal Trade Commission Act ("FTCA") Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, required Defendant to take reasonable measures to protect Plaintiff's and the Class Member's PII data and is a further source of Defendant's duty to Plaintiff and the Class Members. Section 5 prohibits unfair practices in or affecting commerce, including, as interpreted and enforced by the FTC, the unfair act or practice by businesses like Defendant of failing to implement and use reasonable measures to protect PII. Defendant, therefore, was required and obligated to take reasonable measures to protect PII it solicited, possessed, held, or otherwise used. The FTC publications and data security breach orders described herein further form the basis of Defendant's duty to adequately

protect PII. By failing to implement and use reasonable data security measures, Defendant acted in violation of § 5 of the FTCA.

109. Defendant is obligated to perform its business operations in accordance with industry standards. Industry standards are another source of duty and obligations requiring Defendant to exercise reasonable care with respect to Plaintiff and the Class Members by implementing reasonable data security measures that do not create a foreseeable risk of harm to Plaintiff and the Class Members. Industry best practices put the onus of adequate cybersecurity on the entity most capable of preventing a Data Breach. In this case, Defendant was the only entity capable of adequately protecting the data that that it alone solicited, collected, and stored.

110. The injuries to Plaintiff and Class Members were reasonably foreseeable to Defendant because common law, statutes, and industry standards require Defendant to safeguard and protect its computer systems and employ procedures and controls to ensure that unauthorized third parties did not gain access to Plaintiff's and Class Members' PII.

111. The injuries to Plaintiff and Class Members also were reasonably foreseeable because Defendant knew or should have known that systems used for safeguarding PII were inadequately secured and exposed PII to being breached, accessed, and stolen by hackers and unauthorized third parties. As such, Defendant's own misconduct created a foreseeable risk of harm to Plaintiff and Class Members.

112. Defendant's failure to take reasonable steps to protect the PII of Plaintiff and Class Members was a proximate cause of their injuries because it directly allowed thieves easy access to Plaintiff's and Class Members' PII. This ease of access allowed thieves to steal PII of Plaintiff and Class Members, which will likely lead to dissemination in black markets.

113. As a direct proximate result of Defendant's conduct, Plaintiff and Class Members

have suffered theft of their PII. Defendant allowed thieves access to Plaintiff's and Class Members' PII, thereby decreasing the security of Plaintiff's and Class Members' financial and personal accounts, making Plaintiff's and Class Members' identities less secure and reliable, and subjecting Plaintiff and Class Members to the imminent threat of identity theft. Not only will Plaintiff and Class Members have to incur time and money to re-secure their bank accounts and identities, but they will also have to protect against identity theft for years to come.

114. Defendant's conduct warrants moral blame because Defendant actively solicited the PII of Plaintiff and Class Members without disclosing that its security was inadequate and unable to protect the PII of Plaintiff and Class Members. Holding Defendant accountable for its negligence will further the policies embodied in such law by incentivizing IT service providers to properly secure sensitive consumer information and protect the consumers who rely on these companies every day.

115. As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have been injured as described herein and throughout this Complaint, and are entitled to damages, including compensatory, and punitive damages, in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**
**Negligence *Per Se***
**(On Behalf of Plaintiff and the Class)**

116. Plaintiff restates and realleges all proceeding allegations above and hereafter as if fully set forth herein.

117. Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and members of the Class's PII.

118. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting

commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect consumers' PII. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiff's and the members of the Class's sensitive PII.

119. Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

120. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and members of the Class.

121. Defendant had a duty to Plaintiff and the Class to implement and maintain reasonable security procedures and practices to safeguard Plaintiff's and the Class's PII.

122. Defendant breached its respective duties to Plaintiff and members of the Class under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and the Class's PII.

123. Defendant's violation of Section 5 of the FTC Act and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

124. But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and members of the Class, Plaintiff and members of the Class would not have been injured.

125. The injury and harm suffered by Plaintiff and members of the Class were the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiff and members of the Class to suffer the foreseeable harms associated with the exposure of their PII.

126. As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and members of the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of PII; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen personal information, entitling them to damages in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**
**Invasion of Privacy**
**(On Behalf of Plaintiff and the Class)**

127. Plaintiff restates and realleges all proceeding allegations above and hereafter as if fully set forth herein.

128. Plaintiff and the Class had a legitimate expectation of privacy regarding their PII and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

129. Defendant owed a duty to Plaintiff and the Class to keep their PII confidential.

130. The unauthorized disclosure and/or acquisition (*i.e.*, theft) by a third party of Plaintiff's and the Class's PII is highly offensive to a reasonable person. Defendant's reckless and negligent failure to protect Plaintiff's and the Class's PII constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a

reasonable person.

131. Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

132. Because Defendant failed to properly safeguard Plaintiff's and the Class's PII, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

133. As a proximate result of Defendant's acts and omissions, the private and sensitive PII of Plaintiff and the Class Members was stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

134. Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their PII is still maintained by Defendant with their inadequate cybersecurity system and policies.

135. Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the PII of Plaintiff and the Class.

136. Plaintiff, on behalf of himself and Class Members, seeks injunctive relief to enjoin Defendant from further intruding into the privacy and confidentiality of Plaintiff's and Class Members' PII.

137. Plaintiff, on behalf of himself and Class Members, seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus

1    prejudgment interest, and costs.

2

3                              **FOURTH CAUSE OF ACTION**
4                                **Breach of Implied Contract**
                              **(On Behalf of Plaintiff and the Class)**
5

6          138.    Plaintiff restates and realleges all proceeding allegations above and hereafter as if
7    fully set forth herein.

8          139.    Plaintiff and the Class entrusted their PII to Defendant at the time they entered
9    into an employment relationship with Defendant. In so doing, Plaintiff and the Class entered into
10   implied contracts with Defendant by which Defendant agreed to safeguard and protect such
11   information, to keep such information secure and confidential, and to timely and accurately
12   notify Plaintiff and the Class if their data had been breached and compromised or stolen.
13

14         140.    Plaintiff and the Class fully performed their obligations under the implied
15   contracts with Defendant.

16         141.    Defendant breached the implied contracts it made with Plaintiff and the Class by
17   failing to adequately safeguard and protect their PII, by failing to delete the information of
18   Plaintiff and the Class once the relationship ended, and by failing to provide timely and accurate
19   notice to them that their PII was compromised as a result of the Data Breach.
20

21         142.    As a direct and proximate result of Defendant's above-described breach of
22   implied contract, Plaintiff and the Class have suffered (and will continue to suffer) ongoing,
23   imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary
24   loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale
25   of the compromised data on the dark web; expenses and/or time spent on credit monitoring and
26   identity theft insurance; time spent scrutinizing bank statements, credit card statements, and
27

28

credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

143.     As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiff and the Class are entitled to recover actual, consequential, and nominal damages.

**FIFTH CAUSE OF ACTION**
**Violation of California's Unfair Competition Law ("UCL")**
**Unlawful Business Practice**
**(Cal Bus. & Prof. Code § 17200, *et seq.*)**
**(On Behalf of Plaintiff and the Nationwide Class or, alternatively, the California Subclass)**

144.     Plaintiff restates and realleges all proceeding allegations above and hereafter as if fully set forth herein.

145.     Defendant engaged in unlawful and unfair business practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq*. which prohibits unlawful, unfair, or fraudulent business acts or practices ("UCL").

146.     Defendant is a "person" for purposes of the UCL. *See* Cal. Bus. & Prof. Code § 17202.

147.     Defendant's conduct is unlawful because it violates the California Consumer Privacy Act of 2018, Civ. Code § 1798.100, *et seq*. (the "CCPA"), and other state data security laws.

148.     Defendant stored the unencrypted PII of Plaintiff and the Class in its computer systems and knew or should have known it did not employ reasonable, industry standard, and appropriate security measures that complied with applicable regulations and that would have kept Plaintiff's and the Class's PII secure so as to prevent the loss or misuse of that PII.

149.     Defendant failed to disclose to Plaintiff and the Class that their PII was not

secure. However, Plaintiff and the Class were entitled to assume, and did assume, that Defendant had secured their PII. At no time were Plaintiff and the Class on notice that their PII was not secure, which Defendant had a duty to disclose.

150. Defendant also violated California Civil Code § 1798.150 by failing to implement and maintain reasonable security procedures and practices, resulting in an unauthorized access and exfiltration, theft, or disclosure of Plaintiff's and the Class's nonencrypted and nonredacted PII.

151. Had Defendant complied with these requirements, Plaintiff and the Class would not have suffered the damages related to the data breach.

152. Defendant's conduct was unlawful, in that it violated the CCPA.

153. Defendant's acts, omissions, and misrepresentations as alleged herein were unlawful and in violation of, *inter alia*, Section 5(a) of the Federal Trade Commission Act.

154. Defendant's conduct was also unfair, in that it violated a clear legislative policy in favor of protecting consumers from data breaches.

155. Defendant's conduct is an unfair business practice under the UCL because it was immoral, unethical, oppressive, and unscrupulous and caused substantial harm. This conduct includes employing unreasonable and inadequate data security despite its business model of actively collecting PII.

156. Defendant also engaged in unfair business practices under the "tethering test." Its actions and omissions, as described above, violated fundamental public policies expressed by the California Legislature. *See, e.g.*, Cal. Civ. Code § 1798.1 ("The Legislature declares that . . . all individuals have a right of privacy in information pertaining to them . . . The increasing use of computers . . . has greatly magnified the potential risk to individual privacy that can occur from

the maintenance of personal information."); Cal. Civ. Code § 1798.81.5(a) ("It is the intent of the Legislature to ensure that personal information about California residents is protected."); Cal. Bus. & Prof. Code § 22578 ("It is the intent of the Legislature that this chapter [including the Online Privacy Protection Act] is a matter of statewide concern."). Defendant's acts and omissions thus amount to a violation of the law.

157.    Instead, Defendant made the PII of Plaintiff and the Class accessible to scammers, identity thieves, and other malicious actors, subjecting Plaintiff and the Class to an impending risk of identity theft. Additionally, Defendant's conduct was unfair under the UCL because it violated the policies underlying the laws set out in the prior paragraph.

158.    As a result of those unlawful and unfair business practices, Plaintiff and the Class suffered an injury-in-fact and have lost money or property.

159.    The injuries to Plaintiff and the Class greatly outweigh any alleged countervailing benefit to consumers or competition under all of the circumstances.

160.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misconduct alleged in this complaint.

161.    Therefore, Plaintiff and the Class are entitled to equitable relief, including restitution of all monies paid to or received by Defendant; disgorgement of all profits accruing to Defendant because of its unfair and improper business practices; a permanent injunction enjoining Defendant's unlawful and unfair business activities; and any other equitable relief the Court deems proper.

**SIXTH CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

162.    Plaintiff restates and realleges all proceeding allegations above and hereafter as if

fully set forth herein.

163.    This claim is pleaded in the alternative to Breach of Implied Contract.

164.    Plaintiff and members of the Class conferred a benefit upon Defendant in the form of services through employment. Defendant also benefited from the receipt of Plaintiff's and members of the Class's PII, as this was used to facilitate their employment.

165.    Defendant appreciated or had knowledge of the benefits conferred upon itself by Plaintiff and members of the Class.

166.    Under principals of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and the proposed Class's services and their PII because Defendant failed to adequately protect their PII. Plaintiff and the proposed Class would not have provided their PII or worked for Defendant at their payrates had they known Defendant would not adequately protect their PII.

167.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and members of the Class all unlawful or inequitable proceeds received by it because of its misconduct and Data Breach.

**<u>SEVENTH CAUSE OF ACTION</u>**
**Violation of the California Consumer Records Act**
**Cal. Civ. Code § 1798.80, *et seq*.**
**(On Behalf of Plaintiff and the California Subclass)**

168.    Plaintiff restates and realleges all proceeding allegations above and hereafter as if fully set forth herein.

169.    Plaintiff brings this Count on his own behalf and on behalf of the California Class (the "Class" for the purposes of this Count).

170.    Under California law, any "person or business that conducts business in California, and that owns or licenses computerized data that includes personal information" must

"disclose any breach of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person." (Cal. Civ. Code § 1798.82.) The disclosure must "be made in the most expedient time possible and without unreasonable delay" (*Id.*), but "immediately following discovery [of the breach], if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." (Cal. Civ. Code § 1798.82, subdiv. b.)

171.    The Data Breach constitutes a "breach of the security system" of Defendant.

172.    An unauthorized person acquired the personal, unencrypted information of Plaintiff and the Class.

173.    Defendant knew that an unauthorized person had acquired the personal, unencrypted information of Plaintiff and the Class, but waited approximately four months to notify them. Four months was an unreasonable delay under the circumstances.

174.    Defendant's unreasonable delay prevented Plaintiff and the Class from taking appropriate measures from protecting themselves against harm.

175.    Because Plaintiff and the Class were unable to protect themselves, they suffered incrementally increased damages that they would not have suffered with timelier notice.

176.    Plaintiff and the Class are entitled to equitable relief and damages in an amount to be determined at trial.

### EIGHTH CAUSE OF ACTION
**Violation of the California Consumer Privacy Act**
**Cal. Civ. Code § 1798.150**
**(On Behalf of Plaintiff and the California Subclass)**

177.    Plaintiff restates and realleges all proceeding allegations above and hereafter as if fully set forth herein.

178.     Plaintiff brings this Count on his own behalf and on behalf of the California Class (the "Class" for the purposes of this Count).

179.     Defendant violated California Civil Code § 1798.150 of the CCPA by failing to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the nonencrypted PII of Plaintiff and the Class. As a direct and proximate result, Plaintiff's, and the Class's nonencrypted and nonredacted PII was subject to unauthorized access and exfiltration, theft, or disclosure.

180.     Defendant is a business organized for the profit and financial benefit of its owners according to California Civil Code § 1798.140, that collects the personal information of its customers and employees, and whose annual gross revenues exceed the threshold established by California Civil Code § 1798.140(d).

181.     Plaintiff and Class Members seek injunctive or other equitable relief to ensure Defendant hereinafter adequately safeguards PII by implementing reasonable security procedures and practices. Such relief is particularly important because Defendant continues to hold PII, including Plaintiff's and Class members' PII. Plaintiff and Class members have an interest in ensuring that their PII is reasonably protected, and Defendant has demonstrated a pattern of failing to adequately safeguard this information.

182.     Pursuant to California Civil Code § 1798.150(b), Plaintiff mailed a CCPA notice letter to Defendant's registered service agents, detailing the specific provisions of the CCPA that Defendant has violated and continues to violate. If Defendant cannot cure within 30 days—and Plaintiff believes such cure is not possible under these facts and circumstances—then Plaintiff intends to promptly amend this Complaint to seek statutory damages as permitted by the CCPA.

183.     As described herein, an actual controversy has arisen and now exists as to whether

Defendant implemented and maintained reasonable security procedures and practices appropriate to the nature of the information so as to protect the personal information under the CCPA.

184. A judicial determination of this issue is necessary and appropriate at this time under the circumstances to prevent further data breaches by Defendant.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually, and on behalf of all others similarly situated, prays for relief as follows:

    a. For an order certifying the Class and naming Plaintiff as representatives of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

    b. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

    c. For statutory damages, and/or punitive damages and actual damages in an amount to be determined by the trier of fact;

    d. For an order of restitution and all other forms of equitable monetary relief;

    e. Declaratory and injunctive relief as described herein;

    f. Awarding Plaintiff reasonable attorneys' fees, costs, and expenses as otherwise allowed by law;

    g. Awarding pre- and post-judgment interest on any amounts awarded; and

    h. Awarding such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the putative Class, demand a trial by jury on all claims so triable.

DATED: June 12, 2023

Respectfully Submitted,

_/s/ Natalie A. Lyons_
Natalie Lyons, No. 293026
**COHEN & MALAD, LLP**
One Indiana Square
Suite 1400
Indianapolis, IN 46204
(317) 636-6481
Fax: (317) 636-2593
nlyons@cohenandmalad.com

Samuel J. Strauss*
Raina Borrelli*
**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703
T: (608) 237-1775
F: (608) 509-4423
sam@turkestrauss.com
raina@turkestrauss.com

* _Pro hac vice forthcoming_

_Attorneys for Plaintiff and Proposed Class_